# IN THE COURT OF APPEALS OF IOWA

No. 18-0916
Filed October 9, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TANER VONGSENGETH MANN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

A defendant appeals his convictions for willful injury causing bodily injury, domestic abuse assault with a dangerous weapon, first-degree harassment, child endangerment, and false imprisonment—challenging the finding his competency was restored. **AFFIRMED.**

Angela Campbell of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

The State charged Taner Vongsengeth Mann with five crimes stemming from his violent attack on his girlfriend, A.V. The district court originally found Mann incompetent to stand trial and sent him for treatment. In this appeal, Mann challenges the court's later determination treatment had restored his competency. Mann alleges the court denied his right to due process by accepting his guilty plea when he had no "'rational' understanding of what was happening." On our independent review of the record, we conclude Mann failed to show he remained incompetent to stand trial or plead guilty.

## I. Facts and Prior Proceedings

In February 2017, Mann attacked A.V. with a baseball bat. He beat her severely in front of her four-year-old child. For a week, he refused to let A.V. leave the apartment to seek medical attention. A.V. suffered numerous injuries, including broken hands, a broken nose, and loss of sight in one eye. She eventually went to the hospital, where she was interviewed by police.

In early March 2017, the State charged Mann with willful injury causing serious injury, domestic abuse assault with a dangerous weapon, harassment in the first degree, child endangerment, and false imprisonment. Mann's trial counsel requested and obtained a mental evaluation.

Psychologist Michael Huston examined Mann in late March. In his report to the court, Dr. Huston noted Mann had been diagnosed with bipolar disorder and posttraumatic stress disorder (PTSD) but had not consistently taken medication or followed up with psychiatric treatment. Mann told Dr. Huston he had paranoid thoughts and heard voices "telling him that 'something bad is about to happen.'"

Huston described Mann as moving slowly and appearing dazed. He found Mann was "confused, stressed, and tense" and "had difficulty comprehending some questions until they were simplified and restated." Also his speech was "disjointed and disorganized." Dr. Huston found Mann's responses "logical, although paranoid delusional thought was evident in several statements about being watched when he left his house, and when talking about his ex-girlfriend." Mann scored in the "extremely low" range of functioning—with an IQ of 58—and had poor insight into his mental health and legal situation. Dr. Huston opined Mann demonstrated "moderate impairment in ability to understand and appreciate the charge[s] against him and his legal situation," "substantial impairment in his ability to understand legal proceedings," and "substantial impairment in his ability to assist in his own defense."

The district court decided Mann was unable to assist in his defense and suspended proceedings, sending Mann to the Iowa Medical and Classification Center for treatment to restore his competency. Treating psychiatrist Gary Keller agreed with Dr. Huston's diagnoses of psychotic disorder, amphetamine-use disorder, and cannabis-use disorder. Dr. Keller prescribed medications to treat Mann's psychiatric symptoms.

In his thirty-day report, dated July 13, 2017, Dr. Keller told the court Mann "did make a good recovery and he has now completed his restoration evaluation." Dr. Keller indicated a report from the evaluator was forthcoming and Mann had been discharged "back into the custody of Polk County."

Six days later, the court held an unreported hearing on Mann's competency. On the day of the hearing, July 19, the court issued this written ruling:

> The Court having heard the evidence and argument of Counsel finds:
>
> 1. By a preponderance of the evidence that the Defendant's competency has been restored in that the Defendant is able to appreciate the charge, understand the proceedings and effectively assist in the Defendant's defense.
>
> 2. The placement previously ordered in this matter should be terminated and the criminal proceedings against the Defendant should be reinstated.
>
> 3. Defendant is not in need of continued treatment to maintain competency.

The court reinstated the criminal proceedings against Mann and set a new trial date.

In August 2017, the court granted a defense request to hire a medical expert to "assist in analyzing the legal significance of [Mann's] mental health issues as they relate to the charges in this case."

Mann appeared for a plea hearing on Friday, April 6, 2018. Expressing frustration with Mann's reversals and inconsistencies in the pretrial period, the prosecutor stated,

> We show up today, and now I'm not sure if it's because he has no memory of the event but admits that there's no reason to doubt what has been contained in the minutes of testimony or the fact that he is just innocent and knows he'll be convicted at trial.
> . . . I would need to know which version it is. And to be honest with you, this defendant does not know what he's doing five minutes from the other. We've already gone through this in another one of his cases . . . where we did this cat-and-mouse game all the way up to the day of trial where the jury was waiting upstairs.

Defense counsel explained Mann's "desire to enter an Alford[1] plea is because he does not remember having engaged in the acts that he is charged with here." Defense counsel asked, "Do you . . . agree that by going to trial you don't stand to

---

[1] An Alford plea allows a defendant to enter a plea without an admission of guilt. *See North Carolina v. Alford*, 400 U.S. 25, 39, 91 S. Ct. 160, 168 (1970).

benefit anything?" Mann responded, "Well, no." Later, the following exchange occurred:

> DEFENSE COUNSEL: And you also have to admit that it is very likely that if all of the witnesses come and testify according to what is in here in black and white that it is very likely that you are going to get found guilty.
> MANN: I'm not sure.
> Q: You're not sure? Do you believe that if everybody comes in here and testifies to what's said here—I know you're not sure. A: I'm not sure.
> Q: I know you're not sure. Do you think it's likely that— A: It's a possibility, yes.
> Q: It's a possibility. You recognize that? A: Yeah.
> Q: Okay. And you don't have any affirmative defenses to this; right? A: What do you mean?
> Q: Do you have any witnesses that are going to come testify on your behalf? A: Could very well.
> Q: Okay. A: But not right now.
> Q: All right. So you don't know whether or not— A: No.
> Q: —you'll get found guilty? A: No.
> Q: Do you think it's likely that you will? A: Yeah.
>  . . . .
> Q: Do you agree that inside the Minutes of Testimony and the testimony that would be provided by the witnesses and the pictures and all the rest of that business, that there is strong evidence of your guilt? A: I guess, yeah.
> DEFENSE COUNSEL: Okay.
> PROSECUTOR: All right, Your Honor.
> THE COURT: That was a "yes"?
> DEFENSE COUNSEL: That is a "yes."
> THE COURT: Okay.

During the plea hearing, the court and Mann had the following discussion:

> THE COURT: How old are you, Mr. Mann? A: Twenty-eight.
> Q: And what level of education do you have? A: About sixth, fifth.
> Q: Fifth or sixth grade? A: Yeah.
> Q: Okay.
> MR. DYER: You didn't finish high school? A: No. I told you this.
> THE COURT: Do you have any problems reading or writing— A: Yes.
> Q: —or understanding English? A: Yes.
> Q: Which one? A: All of them. I can't read or write.

Q: Okay.  A: I can't comprehend stuff.  I was diagnosed with it.

Q: Well, you're not going to have to do a whole lot of reading and writing here today, but you do need to understand what we're talking about.  Do you—  A: I have a problem with that.  I was diagnosed with it.

Q: Diagnosed—  A: It takes a little more.

Q: Stop for a second.  Diagnosed with what?  A: Well, comprehension.

Q: Have you understood what we've been saying here so far?  A: Somewhat.

Q: What part don't you understand?  A: I'm not sure.

Q: All right.  Well, let's continue, and we'll see how far we can get.  Okay?  A: Yes, sir.

Q: Are you taking any kind of medication right now?  A: Yes.

Q: What is it for?  A: My paranoid schizophrenia, modify bipolar, my PTSD.

Q: And you're on medication right now?  A: Yes.

Q: Okay.  How long have you been on that medication?  A: About a year.

Q: Okay.  So you know how it affects you; right?  A: Somewhat.  I'm still in the process of learning about the stuff.

Q: Uh-huh.  You've understood what I've said so far; right?  A: Yes.

Q: Okay.

This plea hearing was ultimately "derailed" because the prosecution and defense had a misunderstanding related to their agreement.

The following Monday, April 9, 2018, the parties appeared for trial.  But the prosecutor and defense counsel told the court that Mann decided to go forward with pleading guilty.[2]  The district court found Mann had given his plea voluntarily: "I'm going to find that, based on our colloquy, Mr. Mann is acting voluntarily; that he is aware of his constitutional rights and waives those rights; that he fully

---

[2] As part of the plea agreement, the State amended the charge of willful injury causing serious injury, a class "C" felony, to willful injury causing bodily injury, a class "D" felony. Mann pleaded guilty to that lesser included offense, as well as the other offenses charged in the trial information.

understands the nature of these charges and the potential consequences of pleading guilty to those charges."

At the sentencing hearing in July 2018, the prosecutor asked for consecutive terms and offered the following thoughts:

> This event—the bat, the torture, the beating—was the result of being interrogated and accused of some delusion the defendant has.
> And I would love to say the defendant has moved on, but he hasn't because he still is uttering these insane ideas in the presentence investigation report. . . .
> This defendant has not taken responsibility; he has not moved on; he does not believe he has done anything wrong. In fact, somehow feels justified in what he did. This is a ticking time bomb.
> Now, I'm not saying that he is not competent to stand trial because he has been evaluated by many doctors. He understands right from wrong. That's the problem. He has a different view of reality, which does not mean that he's not competent. It just means he's dangerous.

The district court entered judgment on the five offenses and imposed a sentence not to exceed thirteen years. Mann now appeals the district court's finding he was restored to competency.

## II. Error Preservation

As a preliminary issue, the State contends Mann did not preserve error on his incompetency claim. The State asserts Mann did not make a record of opposing the competency finding because the July 19 hearing was not reported and the court's ruling does not detail what arguments the parties advanced. In addition, the defense did not file a written resistance to the restoration-of-competency finding. Mann responds if he failed to preserve error, such failure is excused by ineffective assistance of counsel. *See State v. Brothern*, 832 N.W.2d 187, 191 (Iowa 2013) ("Ineffective assistance of counsel is an exception to the traditional error preservation rules.").

Although the order is not detailed, the district court noted counsel and Mann were present at the competency restoration hearing, and the court weighed the "arguments of counsel" to reach its conclusion that treatment had restored Mann's competency. In addition, at the plea hearing, the court concluded Mann acted voluntarily and knowingly in entering his guilty pleas. Because we have the court's pretrial ruling on restoration of competency and the on-the-record plea proceedings, we can review the issue raised without using the ineffectiveness framework.[3]

### III. Finding of Restored Competency

We review a competency determination de novo because it implicates constitutional rights. *State v. Lyman*, 776 N.W.2d 865, 872–73 (Iowa 2010), *overruled on other grounds by Alcala v. Marriot Int'l, Inc.*, 880 N.W.2d 699, 708, n.3 (Iowa 2016). "[C]onviction of an incompetent defendant violates due process." *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)).

"We presume a defendant is competent to stand trial." *Lyman*, 776 N.W.2d at 874. Mann bears the burden of proving his incompetency by a preponderance of the evidence. *See id.* "If the evidence is in equipoise, the presumption of competency prevails." *Id.* "Moreover, once a court finds a defendant competent to stand trial, the presumption of competency continues unless and until the

---

[3] We also must address whether Mann can directly appeal from his guilty plea. Our supreme court decided recent amendments to Iowa Code section 814.6 limiting direct appeals from guilty pleas apply only prospectively and do not apply to cases, like this one, pending on July 1, 2019. *See State v. Macke*, ___ N.W.2d___, ___, 2019 WL 4382985, at *7 (Iowa 2019).

defendant produces new evidence to the contrary." *Id.* After a finding of incompetency, the presumption of competency returns upon the submission of a medical opinion that the defendant's competency is restored. *See State v. Snethen*, 245 N.W.2d 308, 311 (Iowa 1976). Thus, Mann retains the burden to prove he was not competent at the time of the restoration hearing. *See id.*

The test for competency is whether Mann was "suffering from a mental disorder" which prevented him from "appreciating the charge, understanding the proceedings, or assisting effectively in the defense." *See* Iowa Code § 812.3(1) (2017). The task for the district court was to decide if Mann has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Lucas*, 323 N.W.2d 228, 232–33 (Iowa 1982) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

Mann contends the district court erred in finding he was restored to competency and in accepting his guilty plea as knowing and voluntary. In assessing Mann's contention we look to the evidence presented on competency. Psychiatrist Arnold Anderson submitted a report to the court following his examination of Mann on July 11, 2017. Dr. Anderson reported Mann was taking four different prescription drugs for his mental impairments. Mann advised Dr. Anderson that he had mild difficulty with attention and concentration, but Dr. Anderson did not find that difficulty interfered with his examination. Mann's speech was "normal in rate and form" with "no thought disorder or neologisms." In Dr. Anderson's estimation, Mann appeared "somewhat guarded, mildly sad . . . , and mildly anxious." But as the evaluation proceeded, "His cooperation and

fluency in answering questions increased." Mann denied hallucination or delusions "of either a grandiose or paranoid nature." Mann reported, "I'm doing alright. I've been my medicine—it has eased my mind a little—no more voices."

In the psychiatric examination, Mann said his mood was "good—it's a lot better than it used to be." Mann was able to identify his charges and the facts behind them ("I beat someone with a baseball bat. I held someone against their will. Criminal mischief. Child endangerment.") He expressed his intent to plead not guilty, understood the charges were "very serious," and could carry a range of penalties from "prison—eighteen years" to "probation or getting help like outpatient treatment for mental health." Mann also explained the presumption of innocence and that "you are innocent until they have proved you done it," but expressed skepticism of the justice system, opining, "You are guilty until proven innocent." He expressed the opinion he could not get a fair trial in Des Moines but, "if moved— possibly."

Of the events leading to his charges, he continued to report, "I really don't remember much." Mann could explain the role and purpose of his attorney, the judge, the jury, and the prosecutor. Dr. Anderson concluded:

> To a reasonable degree of medical certainty, after his having completed his restoration, Mr. Mann is now competent to stand trial. He appreciates the charges he faces (naming four out of five) and gives a reasonable estimate of maximum and minimum punishment. He is able to assist his attorney in preparing a defense and increasingly trusts his attorney. While he has a somewhat cynical view of the American justice system and the ability to get a fair trial, this view is a personal opinion and not illness based. He has a factual and rational understanding of the role of the key personnel in court. Although he has mild residual attention deficit disorder, it would not significantly interfere with his ability to follow the proceedings of a trial. His other psychiatric disorders are in

substantial remission and would not interfere with his ability to participate meaningfully in a trial.

Given our independent review of the record, and specifically Dr. Anderson's evaluation, we reach the same conclusion as the district court. Mann adduced no expert opinion to contradict Dr. Anderson's conclusion that he was restored to competency. Mann highlights statements he made during Dr. Anderson's evaluation and suggests deficiencies in Dr. Anderson's methods. But Mann presents no evidence supporting those alleged deficiencies. On this record, Mann has not carried his burden to show he remained incompetent to stand trial or plead guilty.

Mann tries to augment the limited record by pointing to statements he made in the plea proceedings, including the failed plea hearings, as well as the prosecutor's sentiments expressed at the sentencing hearing. But Mann's responses do not appear uncommon for a criminal defendant somewhat confused by the plea process, particularly one with an intellectual impairment, and do not support his position that he remained incompetent. Likewise, the prosecutor's use of the words "insane" and "delusion" at the sentencing hearing was not evidence of Mann's incompetence. *See State v. Graves*, 668 N.W.2d 860, 878 (Iowa 2003). The prosecutor was not giving a medical opinion but discussing Mann's lack of remorse for his actions. Similarly, when the prosecutor complained during the failed plea hearing Mann "does not know what he's doing five minutes from the other," it was an expression of frustration, not evidence of Mann's mental status.

The original incompetency report indicated Mann had untreated and uncontrolled mental health issues. But Dr. Anderson's report shows Mann was

taking psychiatric medications that improved his mental status, by Mann's own admission. Mann specifically noted the voices he had been hearing were gone and he was experiencing no delusions or hallucinations. Although Mann insisted he did not remember the assault, he was able to explain the charges he faced, the relevant facts, and the possible range of sentencing consequences. He was able to explain the criminal trial process and the roles of the relevant actors. He accurately explained the presumption of innocence and expressed a sophisticated skepticism for the criminal justice system. He continued to have a mild impairment in his attention and concentration, but it did not interfere with the examination or his ability to converse with Dr. Anderson. The examination revealed Mann was able to appreciate the charges he faced, understood the criminal proceedings, and communicated effectively with another person about those charges and proceedings, such that he would be able to assist in his own defense.

Mann argues his belief that A.V. was involved in prostitution was a delusion resulting from his mental impairment and showed he did not have a rational understanding of the proceedings. *See State v. Wadsworth*, No. 16-1775, 2018 WL 2230666, at *8–10 (Iowa Ct. App. May 16, 2018) (finding defendant's delusions regarding his murder victim's participation in a government conspiracy to kill him and his inability to communicate with counsel about his mental health status evidenced a lack of rational understanding of the proceedings and rendered him incompetent to assist counsel in his defense). In her initial report to police, A.V. claimed she was engaged in prostitution, information she later recanted. The next day, A.V. told the officer she and Mann made up the story "to distract everyone

from the assault [Mann] had committed" against her. A.V. said she was afraid Mann would "go after her and her family" so she went along with it.

In the prior competency evaluation, Dr. Huston reported Mann's beliefs about A.V.'s "efforts to frame him and have him kill himself" were "likely delusional." But Dr. Anderson's report found Mann was not suffering from paranoid or grandiose delusions. Anderson concluded Mann's psychiatric disorders were in "substantial remission" and regarded Mann's continued belief in prostitution activities as potentially "fact rather than a delusion." The State points out Mann has an interest in maintaining a belief in this version of events to contradict A.V.'s testimony and impugn her credibility for changing her story. On this record, we cannot conclude Mann lacked "a rational as well as factual understanding of the proceedings against him." *See id.* at *4 (citing *Lucas*, 323 N.W.2d at 232–33). He was able to explain and appreciate the charges, understand the proceedings, and communicate his beliefs and memories effectively. Because Mann has not shown he suffers from a mental disorder that renders him incompetent, we affirm the district court ruling.

**AFFIRMED.**

Bower, J., concurs; Potterfield, P.J., concurs specially.

**POTTERFIELD, Presiding Judge** (concurring specially).

I write separately because I believe the better course of action would be to preserve Mann's claims of ineffective assistance of counsel for possible future postconviction relief, as argued by the State. I disagree with the majority's position that the record is adequate to decide the issue of the adequacy of proof supporting the ruling on restoration of competency. Even if Mann took the appropriate steps before the district court to preserve the issue for our review, the lack of record prevents us from doing so. *See State v. Ludwig*, 305 N.W.2d 511, 513 (Iowa 1981) ("It is the defendant's obligation to provide this court with a record affirmatively disclosing the error relied upon."). The hearing was unreported, and we know from the ruling only that Mann and his counsel were present and the court was persuaded by Dr. Anderson's letter. The record does not contain the arguments made by Mr. Mann.

I would find that the issue must be considered in the alternative framework of ineffective assistance of counsel and preserved for further development of the record. The majority emphasizes Mann's burden of proof to show he remained incompetent, which makes it especially important to know defense counsel's conduct of the hearing.

The prosecutor's descriptions of Mann as insane, delusional, and not knowing "what he's doing five minutes from the other" all indicate a substantive question about Mann's state of mind following the ruling of restoration to competency. The majority dismisses these observations made by the prosecutor as "frustration" and not a medical opinion. But the record does not reveal that the

prosecutor chose his language recklessly, out of frustration; we do know the prosecutor argued to the trial court:

> Now, I'm not saying that he is not competent to stand trial because he has been evaluated by many doctors. He understands right from wrong. That's the problem. He has a different view of reality, which does not mean that he's not competent. It just means he's dangerous.

The prosecutor's use of the incorrect standard for competency—"understands right from wrong"—does not reassure me that we should rule on the issue without an adequate record.

I agree with the majority that Mann's convictions should be affirmed. But the issue of restoration to competency should be preserved for later consideration in the context of assistance of counsel.